IN THE CIRCUIT COURT FOR HAMILTON COUNTY, TENNESSEE

FILED

2007 SEP 28 P 3:05

FILED IN OFFICE 2007 AUG 29 AM 11:47 PAULA THOMPSON, CLERK

GRACE MURREY and husband
EDWARD MURREY, IV

Plaintiffs,

vs.

C.R. BARD, INC. and DAVOL, INC.

Defendants.

NO. 07C1008

DIVISION ____________

JURY DEMANDED

# COMPLAINT

Come the plaintiffs, Grace Murrey and husband Edward Murrey, IV, by and through counsel, and hereby institute this Complaint against defendants C.R. Bard, Inc. and Davol, Inc. (hereafter collectively "defendants"), for equitable, injunctive, and declaratory relief and damages. Plaintiffs make the following allegations based upon their personal knowledge, information and belief, as well as upon their attorneys' investigative efforts, as to the defendants' actions and misconduct, and alleges as follows:

## I.

## PARTIES AND JURISDICTION

A. That the plaintiffs, Grace Murrey and husband Edward Murrey, IV, are residents of Hixson, Hamilton County, Tennessee.

B. That the defendants, C.R. Bard, Inc. (hereinafter "C.R. Bard") and Davol, Inc. (hereinafter "Davol"), are foreign corporations doing business in the state of Tennessee but, upon information and belief, these corporations are not licensed to do business in the state of Tennessee. Davol, Inc. is a subsidiary of C.R. Bard, Inc. Defendant C.R. Bard is a New Jersey corporation, with its principal place of business at 730 Central Avenue, Murray Hill, NJ, 07974. Davol is a Rhode Island corporation, with its principal place of business at 100 Sockanossett Crossroad, Cranston, RI 02920.

C. C.R. Bard and Davol develop and manufacture medical technology to treat various medical conditions such as hernias, including a medical device known as a Bard® Ventralex™ Hernia Patch.



EXHIBIT A

D. Upon information and belief, C.R. Bard markets and sells its Bard® Ventralex™ Hernia Patch through its wholly-owned subsidiary, defendant Davol.

E. This action arises from severe personal injuries suffered by the plaintiff Grace Murrey, which occurred in Tennessee, due to a defective Bard® Ventralex™ Hernia Patch, item number 0010302.

F. Based upon the foregoing, jurisdiction and venue properly lie in this court.

## II.

## FACTUAL BACKGROUND

A. Mrs. Murrey suffered a condition known as a umbilical/ventral hernia which necessitated surgical treatment. On or about February 5, 2003, Mrs. Murrey was the recipient of a Bard® Ventralex™ Hernia Patch, item number 0010302. The hernia patch implant surgery was performed by David Redd, M.D., a general surgeon, at Parkridge Medical Center in Chattanooga, Hamilton County, Tennessee. After the hernia repair surgery, Mrs. Murrey was seen in Dr. Redd's office for follow up care, and she had complaints of persistent and unanticipated abdominal pain, which could not be fully explained by Dr. Redd. Mrs. Murrey thereafter consulted Dr. Gary Brunvoll, an OBGYN, who diagnosed chronic pelvic pain, which he treated surgically on May 22, 2006, at Parkridge Medical Center. Post-operatively, Dr. Brunvoll diagnosed adhesions and possible endometriosis as the cause of the chronic pelvic pain. However, Dr. Brunvoll's surgery did not cure Mrs. Murrey and she continued to suffer abdominal pain, which increased in severity, especially on the right side. Mrs. Murrey consulted William Richards, M.D., a general surgeon. On August 29, 2006, Dr. Richards performed surgery at Vanderbilt University Medical Center in Nashville, Tennessee. During this surgery, Dr. Richards discovered that the Bard® Ventralex™ Hernia Patch, which was used in the surgery performed by Dr. Redd in 2003, had broken into pieces, necessitating its removal and replacement with another hernia repair device, and Dr. Richards elected to use a Parietex Composite Mesh for this purpose. Mrs. Murrey remained hospitalized through August 30, 2006, and she had post-operative follow-up care with Dr. Richards.

B. Mrs. Murrey required diagnostic procedures, more surgeries, and other painful treatment for the serious abdominal injuries which she suffered. Plaintiffs aver that Mrs. Murrey's injuries and the subsequent complications were caused as a direct and proximate result of the defective Bard® Ventralex™ Hernia Patch, which was used in the surgery performed by Dr. Redd in 2003.

C. Sometime after Mrs. Murrey's surgery at Vanderbilt University Medical Center on August 29, 2006, the plaintiffs first learned that there was a recall regarding problems with the safety and function of similar types of hernia repair patch devices developed, manufactured, marketed and sold by C.R. Bard and Davol. Specifically, the Bard® Composix® Kugel® Mesh hernia repair patch was the predicate device which C.R. Bard and Davol relied upon to make their "510(K) SUMMARY OF SAFETY AND EFFECTIVENESS FOR THE VENTRALEX PATCH" submission to the United States Food and Drug Administration (hereinafter "FDA") on July 16, 2002. [See Summary form attached as Exhibit "A"]. In that submission, C.R. Bard and Davol described the similarities between the two hernia patch devices and, in particular, stated that the Bard® Ventralex™ Hernia Patch featured the following: "The monofilament PET polymer 'ring' is captured between the two layers of polypropylene mesh and adds stability to the device enabling greater simplicity and assurance in the proper placement." The monofilament PET polymer 'ring' has also been described by the defendants as a "memory recoil ring." In fact, this "memory recoil ring" lacked durability for its intended purpose and the ring has fractured in numerous Bard® Composix® Kugel® Mesh hernia repair patches implanted in other patients thereby causing them serious injuries, such that several of these types of devices were recalled by the FDA in December 2005, January 2006, March 2006 and January 2007. Plaintiffs aver that the Bard® Ventralex™ Hernia Patch implanted in her body failed to function properly due to this same type of design and manufacturing flaw, thereby causing Mrs. Murrey's injuries. At no time has C.R. Bard or Davol notified the plaintiffs that Mrs. Murrey had a hernia repair patch implanted in her body which was likely defective and which could cause her to suffer serious injury and possibly even death.

# III.

## NEGLIGENT AND IMPROPER ACTS OF THE DEFENDANTS

A. At all times relevant, C.R. Bard and Davol misrepresented the safety of the Bard® Ventralex™ Hernia Patches and negligently designed, manufactured, marketed, advertised, promoted and sold the Bard® Ventralex™ Hernia Patches as safe devices to be used for treatment of patients who require hernia repair. As a result of their defective design and manufacture, C.R. Bard's and Davol's Bard® Ventralex™ Hernia Patches break apart, causing parts of the devices to migrate in the body away from their proper placement, causing abdominal pain and tenderness, and in some cases causing piercing injuries to vital organs due to the fractured memory recoil ring. At all times relevant to this action, C.R. Bard and Davol knew, and had reason to know, that the Bard® Ventralex™ Hernia Patches were not safe for the patients for whom they were prescribed and implanted, because the devices malfunctioned, and therefore failed to remain in a safe condition, causing serious medical problems and, in certain patients, catastrophic injuries and deaths.

B. As a result of this defective design and manufacture, C.R. Bard and Davol's Bard® Ventralex™ Hernia Patches caused patients, including Mrs. Murrey, to suffer serious physical trauma and/or death. C.R. Bard and Davol knew and had reason to know of this tendency and the resulting risk of injury and death, and yet concealed this information, preventing patients, including Mrs. Murrey, and their physicians from making informed choices about the implantation of the hernia repair patches.

C. The negligent acts or omissions of Defendants C.R. Bard and Davol, in reckless, wilful and wanton disregard for the health, safety and survival of Mrs. Murrey include, but are not limited to, the following:

1. Defendants designed and/or manufactured defective implantable hernia repair devices;
2. Defendants failed to follow FDA good manufacturing practices, failed to properly investigate manifestations of the implantable hernia repair device defects over the past several years, failed to adequately document reports of the defects, and failed to exercise adequate quality control;

3. Defendants' conduct in designing, manufacturing, marketing, and monitoring the implantable hernia repair devices fell below the duty of care owed by Defendants to Plaintiffs.

4. Defendants intentionally, knowingly, carelessly, recklessly, or negligently concealed information regarding the existence of a defect in the implantable hernia repair devices from the FDA, physicians and the Plaintiffs;

5. Defendants negligently, recklessly, or intentionally misrepresented the quality and usefulness of the implantable hernia repair devices, thereby inducing Plaintiffs to accept implantation of the uniquely-designed implantable hernia repair device rather than another brand of implantable hernia repair device, which would not have been prone to the defect;

6. Defendants are liable for selling a dangerously defective product;

7. Defendants failed to adequately warn or notify patient recipients, including Mrs. Murrey, regarding the defect and the hazards of implantable hernia repair device;

8. Defendants failed to adequately warn or notify hospitals and physicians regarding the defect, malfunction and/or hazards of the implantable hernia repair devices;

9. Defendants breached express and/or implied warranties;

10. Defendants' conduct constitutes fraud and intentional concealment of material facts;

11. Defendants' conduct constitutes constructive fraud;

12. Defendants' conduct constitutes negligence;

13. Defendants are liable for infliction of emotional distress;

14. Defendants violated consumer protection statutes;

15. Defendants are liable for punitive or exemplary damages.

# IV.

## CLAIMS FOR RELIEF

### PRODUCTS LIABILITY

A. At all relevant times hereto, Defendants were engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling, and distributing the implantable hernia repair devices for ultimate sale to, and implantation in, patients. Defendants designed, manufactured, assembled, and sold the implantable hernia repair devices to hospitals and physicians, knowing that they would be thereby sold to patients with hernia disorders, including Plaintiff Mrs. Murrey.

B. Defendants' implantable hernia repair devices were expected to and did reach Plaintiff Mrs. Murrey and the public without substantial change in their condition as manufactured and sold by Defendants. In light of the defect described herein, at the time the implantable hernia repair device reached the Plaintiff Mrs. Murrey it was in a condition not contemplated by any reasonable person among the expected users of the devices, and was unreasonably dangerous to the expected users of the devices when used in reasonably expected ways of handling or consumption.

C. The implantable hernia repair devices designed, manufactured, assembled, and sold by the Defendants to patients, including Plaintiff Mrs. Murrey, were in a defective condition unreasonably dangerous to any user or consumer of the devices, and the Plaintiff Mrs. Murrey was in the class of persons that the Defendants should reasonably foresee as being subject to the harm caused by the devices' defective condition.

D. Plaintiff Mrs. Murrey used the implantable hernia repair device in the manner in which the device was intended to be used.

E. Plaintiffs were not aware of, and could not in the exercise of reasonable care have discovered, the defective nature of Defendants' implantable hernia repair devices and nor could they have known that Defendants designed, manufactured or assembled the implantable hernia repairs in a manner that would increase the risk of bodily injury and death to recipients.

## BREACH OF EXPRESS WARRANTY

A. Plaintiffs re-allege the allegations contained in the foregoing paragraphs.

B. Defendants' promotional statements concerning the implantable hernia repair devices contained broad, express claims amounting to a warranty that Defendants' implantable hernia repair devices were safe and effective, and not defective, for the medical purposes for which they were marketed and sold.

C. Defendants breached their warranty by offering for sale, and selling as safe and non-defective, their implantable hernia repair devices, which in fact were faulty, unsafe and ineffective in respect to their design, manufacture, assembly and/or marketing.

## BREACH OF IMPLIED WARRANTY

A. Plaintiffs re-allege the allegations contained in the foregoing paragraphs.

B. Defendants impliedly warranted that their implantable hernia repair devices, which Defendants designed, manufactured, assembled, promoted and sold to the public and Plaintiff Mrs. Murrey, were merchantable and fit and safe for ordinary use. Defendants further impliedly warranted that their implantable hernia repair devices, which Defendants designed, manufactured, assembled, promoted and sold to the public and Plaintiff Mrs. Murrey, were fit for the particular purpose of providing surgical repair treatment of patients who have hernias.

C. Defendants' implantable hernia repair devices were defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected the public and Plaintiff Mrs. Murrey to severe and permanent injuries. Therefore, Defendants breached the implied warranties of merchantability and fitness for a particular purpose when their implantable hernia repair devices were sold to the public and Plaintiff Mrs. Murrey, in that the implantable hernia repair devices are defective and have failed to function as represented and intended.

## FRAUD

A. Plaintiffs re-allege the allegations contained in the foregoing paragraphs.

B. At all times during the course of dealing between Defendants, the public and Plaintiff Mrs. Murrey, Defendants misrepresented that the implantable hernia repair devices were safe for their intended use.

C. Defendants were under a duty to disclose to the public and Plaintiff Mrs. Murrey the defective nature of their implantable hernia repair devices, and had full access to material facts concerning the defective nature of the products and the propensity of the implantable hernia repair devices' malfunction, and hence, cause damage to the patient recipients.

D. Defendants intentionally, knowingly or recklessly misrepresented that the implantable hernia repair devices were safe for their intended use, and Defendants knew that the implantable hernia repair devices had caused serious injury to certain patients.

E. Defendants' misrepresentations and omissions were made purposefully, willfully, wantonly, or recklessly, in order to induce Plaintiff Mrs. Murrey and the public to purchase Defendants' implantable hernia repair devices and/or agree to have the devices implanted into their bodies, and the public and Plaintiff Mrs. Murrey did reasonably rely upon the misrepresentations and omissions made by the Defendants about the implantable hernia repair devices when agreeing to purchase and/or have the devices implanted in their bodies.

F. Defendants knew that the public and Plaintiff Mrs. Murrey had no way to determine that the Defendants' representations about the implantable hernia repairs were false and misleading, and that they included material omissions.

## CONSTRUCTIVE FRAUD

A. Plaintiffs re-allege the allegations contained in the foregoing paragraphs.

B. At the time of selling the implantable hernia repair devices to the public and Plaintiff Mrs. Murrey the Defendants were in a unique position of knowledge concerning the safety and effectiveness of the devices, which knowledge was not possessed by the public and Plaintiff Mrs. Murrey, and Defendants thereby held a position of superiority over the public and Plaintiff Mrs. Murrey.

C. Through their unique knowledge and expertise regarding the defective nature of the implantable hernia repair devices, and through their statements to physicians, hospitals and their patients in advertisements, promotional materials, and other communications, Defendants professed to the public and Plaintiff Mrs. Murrey that they had knowledge of the truth of the representation that the implantable hernia repair devices were safe for their intended use and were not defective.

D. Defendants' representations to the public and Plaintiff Mrs. Murrey were unqualified statements made to induce the public and Plaintiff Mrs. Murrey to purchase the implantable hernia repair devices, and the public and Plaintiff Mrs. Murrey relied upon the statements when purchasing the devices and having them implanted in their bodies.

E. The Defendants took unconscionable advantage of their dominant position of knowledge with regard to the public and Plaintiff Mrs. Murrey and engaged in constructive fraud in their relationship with the public and Plaintiff Mrs. Murrey, all of whom reasonably relied on Defendants' representations.

NEGLIGENCE

A. Plaintiffs re-allege the allegations contained in the foregoing paragraphs.

B. Defendants had a duty to the public and Plaintiff Mrs. Murrey to provide a safe product in design and manufacture, to notify the FDA of design flaws, and to warn the FDA and the public and Plaintiff Mrs. Murrey of the defective nature of Defendants' implantable hernia repair devices. Defendants breached their duty of reasonable care to the public and Plaintiff Mrs. Murrey by incorporating a defect into the design of the implantable hernia repair devices, thereby causing injuries and death.

C. Defendants breached their duty of reasonable care to the public and Plaintiff Mrs. Murrey by manufacturing and assembling implantable hernia repair devices in such a manner that they were prone to fail, malfunction and expose the public and Plaintiff Mrs. Murrey to life-threatening physical trauma.

D. Defendants breached their duty of reasonable care to the public and Plaintiff Mrs. Murrey by failing to notify the FDA at the earliest possible date of known design defects in and/or malfunctions of the implantable hernia repair devices.

E. Defendants breached their duty of reasonable care to the public and Plaintiff Mrs. Murrey by failing to exercise due care under the circumstances.

## VIOLATION OF CONSUMER PROTECTION STATUTES

A. Plaintiffs re-allege the allegations contained in the foregoing paragraphs.

B. Under statutes enacted in Tennessee and all other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, the public and Plaintiff Mrs. Murrey are consumers who purchased Defendants' implantable hernia repair devices pursuant to a consumer transaction for personal use and are therefore subject to protection under such legislation.

C. Under statutes enacted in Tennessee and all other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, the Defendants are suppliers, manufacturers, advertisers, and sellers who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

D. Defendants violated the statutes enacted in Tennessee and all other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that their implantable hernia repair devices were fit to be used for the purpose for which they were intended, when in fact the implantable hernia repair devices were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

E. The actions of the Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in Tennessee and all other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

F. Plaintiffs aver that the implantable hernia repair devices manufactured, marketed and designed by the Defendants were defective or unreasonably dangerous for their intended and recommended use within the meaning of Tennessee Code Annotated §29-28-102(2) and (a).

G. Plaintiffs aver that the implantable hernia repair devices were in breach of expressed warranties as defined by Tennessee Code Annotated §47-2-313.

H. Plaintiffs aver that the implantable hernia repair devices were in breach of the implied warranty of merchantability as set forth in Tennessee Code Annotated §47-2-314.

I. Plaintiffs aver that the implantable hernia repair devices were in breach of the implied warranty of fitness for a particular purpose as set forth in Tennessee Code Annotated §47-2-315.

J. The Defendants had actual knowledge of the defective and dangerous condition of the implantable hernia repair devices, and failed to take any action to cure such defective and dangerous condition, well in excess of any reasonable time before the public and Plaintiff Mrs. Murrey did or could have possessed any such knowledge.

## V.

## DAMAGES

A. As a direct and proximate result of Defendants' design, manufacture, assembly, marketing and sales of Defendants' implantable hernia repair devices, the Plaintiffs have sustained damages as a direct and proximate result of Mrs. Murrey's severe injuries, which will be more fully described below.

## VI.

## PUNITIVE DAMAGES

A. Plaintiffs specifically aver that punitive damages are appropriate in this case and allege that the actions of the Defendants herein constituted reckless, wilful and wanton disregard for the health, safety and survival of Mrs. Murrey. Plaintiffs aver that the Defendants were well aware of the risk of severe injury and death to Mrs. Murrey and other recipients of implantable hernia repair devices due to their failures as itemized hereinabove, but continued to market and sell its defective devices to the public and to Plaintiff Mrs. Murrey in reckless, wilful and wanton disregard of those known risks and in disregard of well accepted protocols and procedures designed to prevent such gross injuries and death.

VII.

PRAYER FOR RELIEF

A. As a proximate result of the negligent acts or omissions of the Defendants, Mrs. Murrey suffered severe injuries which would not otherwise have occurred, which thereby caused plaintiffs' resulting damages. Plaintiffs sue the Defendants and seek the following damages:

1. Severe personal injury;
2. Pain and suffering, past and future;
3. Mental pain and anguish, past and future;
4. Loss of the enjoyment of life, past and future;
5. Permanent medical impairment, including extensive and permanent cardiac injury;
6. Medical, hospital and surgical expenses, past and future; and
7. Loss of services and loss of consortium to Edward Murrey, IV.

**WHEREFORE,** Plaintiffs sue the Defendants for compensatory and punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), damages for accrued pre-judgment interest and post-judgment interest at the legal rates, the costs of this cause, including reasonable expenses, and any and all further damages to which they may be entitled. **PLAINTIFFS DEMAND A JURY OF TWELVE PERSONS TO TRY THESE ISSUES WHEN JOINED.**

Respectfully submitted,

MCMAHAN LAW FIRM

By______________________

John D. McMahan, BPR # 4230
Certified Medical Malpractice Specialist by the Tennessee
Commission on Continuing Legal Education & Specialization
Attorneys for the Plaintiff
323 High Street
Chattanooga, TN 37403
(423) 265-1100

K021736

JUL 16 2002

# 510(K) SUMMARY OF SAFETY AND EFFECTIVENESS FOR THE VENTRALEX PATCH

**A. Submitter Information**

| | |
|---|---|
| Submitter's Name: | Davol, Inc. |
| Address: | Subsidiary of C. R. Bard, Inc.<br>100 Sockanossett Crossroad<br>Cranston, RI 02920 |
| Telephone: | 401-463-7000 ext. 2263 |
| Fax: | 401-463-3845 |
| Contact Person: | Brian A. Kanerviko |
| Date of Preparation: | May 1, 2002 |

**B. Device Name**

Ventralex Patch

**C. Predicate Device Name**

Trade name: Bard Composix Kugel Mesh (Davol Inc.)

**D. Device Description**

The proposed Ventralex Patch is a self-expanding, three layer device. Two layers consist of polypropylene mesh. The top layer of polypropylene mesh forms a positioning strap and pocket. The purpose of the strap and pocket is to facilitate placement, positioning and fixation of the device. After the device has been properly placed and attached, the positioning strap must be removed and properly discarded. The monofilament PET polymer "ring" is captured between the two layers of polypropylene mesh and adds stability to the device enabling greater simplicity and assurance in the proper placement. The third layer of the device is a single layer of expanded polytetrafluoroethylene (ePTFE) that is attached to the polypropylene mesh with an interlocking PTFE stitch pattern. The peripheral edge of the polypropylene mesh is heat sealed to the ePTFE layer.

**E. Intended Use**

The Ventralex Patch is intended for use in all hernia repairs requiring reinforcement with a nonabsorbable support material.

**F. Summary of Similarities and Differences in Technological Characteristics, Performance and Intended Use**



Exhibit "A"

The Ventralex Patch and the predicate Composix Kugel Mesh are both intended for the use in all forms of hernia repair requiring reinforcement with a nonabsorbable support material.

Technologically, the proposed device has the same the same materials, and similar physical attributes and manufacturing methods.

The proposed device is designed to form a strap and pocket. The predicate device is designed to form just a pocket. The strap will be made of polypropylene. The purpose of the strap is to facilitate placement, positioning and fixation of the device. After the device has been properly placed and attached, the positioning strap must be removed and properly discarded.

**G. Performance Data**

Biocompatibility and bench testing have been completed and support the safety and effectiveness of the Ventralex Patch for its intended use.

As previously mentioned, the Composix Kugel predicate and the proposed Ventralex Patch devices use the same materials and similar manufacturing methods for production. The Ventralex Patch and the Composix Kugel Mesh have a single layer of expanded polytetrafluoroethylene (ePTFE) and is attached to the polypropylene mesh with an interlocking stitch using polytetrafluoroethylene (PTFE) monofilament. The peripheral edge of the polypropylene mesh is heat sealed to the ePTFE layer.

The biocompatibility test results show that the material used in the design and manufacture of the device are non-toxic and non-sensitizing to biological tissues consistent with their intended use. Laboratory test results demonstrate that the materials chosen and the design utilized in manufacturing the Ventralex Patch will meet the established specifications necessary for consistent performance during their intended use.



Exhibit "A"

McMA[
LAW F
TRIAL LAWYERS FOR T
A PROFESSIONAL CORP
323 High Street
Chattanooga, TN 37403

7005 3110 0000 4241 9984



VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED

Timothy M. Ring
Chairman & C.E.O.
C.R. Bard, Inc.
730 Central Avenue
Murray Hill, NJ 07974

# STATE OF TENNESSEE
## IN THE CIRCUIT COURT OF HAMILTON COUNTY

GRACE MURREY and husband *
EDWARD MURREY, IV *
*
Plaintiffs, * NO. 07C1008
* 
vs. * DIVISION ______
*
C.R. BARD, INC. and DAVOL, INC. * JURY DEMANDED
*
Defendants. *

FILED IN OFFICE
2007 AUG 29 AM 11:46
PAULA T. THOMPSON, CLERK
BY ______ D.C.

## SUMMONS

| Defendant | | Address |
|---|---|---|
| TO: C.R. BARD, INC. | SERVE | Timothy M. Ring<br>Chairman & CEO, C.R. Bard, Inc.<br>730 Central Avenue<br>Murray Hill, NJ, 07974 |
| DAVOL, INC. | SERVE | Daniel W. LaFever,<br>President, Davol, Inc., Sub. C.R. Bard, Inc.<br>100 Sockanossett Crossroad<br>Cranston, RI 02920 |

**You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.**

WITNESSED and Issued this 29 day of August, 2007

Paula Thompson, Circuit Court Clerk

By ______________
Deputy Circuit Court Clerk

Attorneys for Plaintiffs: John D. McMahan, BPR# 4230
MCMAHAN LAW FIRM
323 High Street
Chattanooga, TN 37403; (423) 265-1100

**Address & Phone Number**

Plaintiff's Address: c/o plaintiffs' attorneys

Received this ______ day of ______________, 2007.

/s/ Deputy Sheriff